**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SKY BUSINESS CREDIT, LLC, an Illinois limited liability company,<br>Plaintiff<br>v.<br><br>GARY HERWOOD, DAWN HERWOOD aka DAWN CHAPMAN and DM CHAPMAN, ECOWATTLE/TEXAS SUSTAINABLE INDUSTRIES LLC, a Texas limited liability company, and BLUE SKY MARKETING & CONSULTING, INC., a Florida corporation;<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

## VERIFIED COMPLAINT AND REQUEST FOR PREJUDGMENT RELIEF

Plaintiff SKY BUSINESS CREDIT, LLC, an Illinois limited liability company ("SBC"), by its attorneys, for its Verified Complaint and Request for Prejudgment Relief against defendants GARY HERWOOD, DAWN HERWOOD aka DAWN CHAPMAN and DM CHAPMAN, ECOWATTLE/TEXAS SUSTAINABLE INDUSTRIES LLC, a Texas limited liability company ("EcoWattle"), and BLUE SKY MARKETING & CONSULTING, INC., a Florida corporation ("Blue Sky")(collectively, "Defendants"), states as follows:

### Parties, Jurisdiction, and Venue

1. SBC is an Illinois limited liability company, with its headquarters and principal place of business located in Downers Grove, Illinois. As a limited liability company, SBC is a citizen of the states of each of its members. The sole member of SBC is Gail Reints-Pratl, an individual resident and citizen of the State of Illinois.

2. Defendant EcoWattle is a Texas limited liability company with its principal place of business at 125 S. Virginia Avenue, Tyler, Texas 75702. As a limited liability company, EcoWattle

is a citizen of the states of each of its members. On information and belief, EcoWattle's sole member is Blue Sky, a Florida corporation with its principal place of business in Texas.

3. On information and belief, Gary Herwood may also be a member of EcoWattle. Gary Herwood is an individual citizen of the State of Texas who, on information and belief, resides at 1601 Brandywine Drive, Tyler, Texas 75703.

4. Defendant Gary Herwood is an individual citizen of the State of Texas who, on information and belief, resides at 1601 Brandywine Drive, Tyler, Texas 75703.

5. Defendant Dawn Herwood is the wife of Gary Herwood and, on information and belief, is an individual citizen of the State of Texas who resides at 1601 Brandywine Drive, Tyler, Texas 75703.

6. On information and belief, Defendant Blue Sky is an inactive corporation that was also created and used by Defendants Gary Herwood and Dawn Herwood as part of the scheme to defraud SBC.

7. This Court has original federal question subject matter jurisdiction under 28 U.S.C. §1331 because this action arises under RICO, 18 U.S.C. §1962. This Court has supplemental jurisdiction over all other claims raised in this action under 28 U.S.C. §1367(a) because they are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy.

8. This Court also has jurisdiction over this action based upon diversity of the parties pursuant to 28 U.S.C. §1332(a)(1) because, upon information and belief, each Defendant is a citizen of different states than SBC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue in the Northern District of Illinois is proper under 28 U.S.C. §1391(a) because a substantial part of the events giving rise to SBC's claims occurred in this District and because all parties, pursuant to Section 11.1 of the Factoring Agreement (as hereinafter defined), consented to the exclusive jurisdiction of any state of federal court sitting in the City of Chicago, County of Cook, State of Illinois.

10. This Court also has jurisdiction pursuant to Section 14(b) of the Blue Sky Guaranty (as hereinafter defined) in which Blue Sky agreed to the jurisdiction of this Court.

## Allegations Common to All Counts

### *A. The Factoring Business*

11. SBC is in the factoring business, in which a "Factor" or "Purchaser" contracts to buy commercial accounts receivable ("Accounts") from a "Factoring Client."

12. "Accounts" as used herein and in the factoring industry has the same meaning as identified by the State of Illinois Uniform Commercial Code, 810 ILCS 5/9-101 *et. seq.,* (hereinafter "UCC"), which is:

> a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a State, governmental unit of a State, or person licensed or authorized to operate the game by a State or governmental unit of a State. 810 ILCS 5/9-102(a)(2).

13. The Factoring Client's customers, to whom the Factoring Client has provided goods or services and who owe on Accounts, are identified in the factoring industry as "Account Debtors," which as defined by § 9-102(3) of the UCC is "a person obligated on an Account…"

14. When a Factor purchases Accounts, it advances funds to the Factoring Client for the purchased Accounts, the Factoring Client invoices its Account Debtors, and the Factor then collects payment directly from those Account Debtors, i.e. the Factoring Client's customers.

***B. EcoWattle's Sale of Accounts to SBC***

15. In and around the fall of 2011, EcoWattle, by representations of Gary Herwood, represented itself to SBC as an erosion control company located in Tyler, Texas, serving Account Debtors who purchased its erosion services and products. These communications to SBC were transmitted by telephone, by use of the United States Mail, and by electronic means through emails between Gary Herwood and SBC.

16. Induced by Defendants Gary Herwood's and EcoWattle's representations, SBC entered into an Agreement for Sale and Purchase (the "Original Factoring Agreement") to purchase Accounts from EcoWattle, which Gary signed and returned to SBC through the United States mail on or about October 29, 2011, the date reflected on the Original Factoring Agreement.

17. The Original Factoring Agreement was amended on May 8, 2015 through a First Amendment to Sale and Purchase Agreement, further amended on August 24, 2015 by a Second Amendment to Sale and Purchase Agreement, further amended on March 28, 2016 by a Third Amendment to Sale and Purchase Agreement, further amended on September 7, 2017 by a Fourth Amendment to Sale and Purchase Agreement, further amended on October 20, 2017 by a Fifth Amendment to Sale and Purchase Agreement, further amended on March 6, 2018 by a Sixth Amendment to Sale and Purchase Agreement, further amended on October 4, 2018 by a Seventh Amendment to Sale and Purchase Agreement, further amended on December 20, 2018 by an Eighth Amendment to Sale and Purchase Agreement, further amended on September 16, 2019 by a Ninth Amendment to Sale and Purchase Agreement, further amended on September 23, 2020 by

a Tenth Amendment to Sale and Purchase Agreement, further amended on November 10, 2021 by an Eleventh Amendment to Sale and Purchase Agreement, further amended on October 11, 2022 by a Twelfth Amendment to Sale and Purchase Agreement, further amended on May 26, 2023 by a Thirteenth Amendment to Sale and Purchase Agreement, further amended on February 21, 2024 by a Fourteenth Amendment to Sale and Purchase Agreement, and further amended on October 9, 2024 by a Fifteenth Amendment to Sale and Purchase Agreement. The Original Factoring Agreement, along with all amendments are incorporated herein and collectively referenced as the "Factoring Agreement," true and correct copies of which are attached hereto as ***Exhibit 1***.

18. Gary Herwood signed the Factoring Agreement as "President" and "individually as Guarantor;" his signatures were witnessed by Dawn Herwood. (***Ex. 1***-Factoring Agreement, p. 5):

I HAVE READ AND AGREED TO THE AFOREMENTIONED TERMS & CONDITIONS OF THE FIVE PAGES OF THIS AGREEMENT.
IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of this 29 day of Oct, 2011.

| SKY BUSINESS CREDIT, LLC | TEXAS SUSTAINABLE INDUSTRIES LLC d/b/a ECOWATTLE |
|---|---|
| By [signature] | By [signature] |
| Title President | Title: ~~Manager~~ President |
| Print Name Gail Reints | Blue Sky Marketing & Consulting, Inc. |
| | Print Name: Gary Herwood |

[signature]
Gary Herwood, individually as Guarantor

WITNESS FOR EXECUTION BY SELLER AND GUARANTOR
Print Name: Dawn Herwood Date: 10/24/11
SignedName: [signature]

19. Through the Factoring Agreement, EcoWattle ostensibly agreed to sell and SBC agreed to purchase certain Accounts of EcoWattle (the "EcoWattle Accounts").

20. EcoWattle also granted SBC, as security for all present and future obligations of EcoWattle under the Factoring Agreement, a continuing first priority and exclusive security interest in the assets of EcoWattle, including all Accounts, contract and contract rights, and all proceeds thereof (the "EcoWattle Collateral"). (***Ex. 1***-Factoring Agreement §7).

21. The Factoring Agreement entitles SBC to require that EcoWattle provide the following reports monthly on the 10th working day of the month for the prior calendar month:

> (a) Accounts Receivable Aging; (b) Accounts Payable Aging; (c) Income Statement; (d) Balance Sheet; (e) Form 941 Filings; and (f) bank statements.

(***Ex. 1***-Factoring Agreement, p.1 ¶F).

22. Through the Factoring Agreement, EcoWattle, as Seller, represented and warranted, among other warranties, that records and documents provided to SBC were true and accurate:

> 6.3. FINANCIAL RECORDS. In connection with the financial records of Seller: (a) each fact in any financial record, statement, books and records or other documents Seller has shown to Purchaser, either before or after the execution of this Agreement, is true and accurate and no information has since come to Seller's attention to materially effect same; (b) Seller has contemporaneously as to each Account Purchased, made the proper entry on its books and records recording the absolute sale of such Accounts to Purchaser; and (c) Seller shall provide such financial information as Purchaser may request, including but not limited to tax returns and financial statements.

(***Ex. 1***-Factoring Agreement §6.3).

23. The Factoring Agreement gave SBC the right to examine and verify EcoWattle's financial records "at any time:"

> 10.3 Purchaser shall have the right to conduct an examination and verification of Seller's financial, accounting, accounts receivable and invoicing records and supporting documents by an employee of Purchaser or a professional selected by Purchaser to verify the accuracy of such records (an "Audit") at any time.

(***Ex. 1***-Factoring Agreement §10.3).

24. The Fifteenth Amendment to the Factoring Agreement required EcoWattle to submit copies of EcoWattle's "tax return (Form 1065)" on a "no less than annual basis." (***Ex. 1***-Factoring Agreement p. 34, ¶2(1.F)).

***C. The Guaranties***

25. Included within the Factoring Agreement is a Personal Guaranty, by which Gary Herwood "personally, absolutely and unconditionally" guaranteed payment of all obligations of EcoWattle and performance of EcoWattle's representations, warranties and covenants in the Factoring Agreement (the "Gary Herwood Guaranty"). (***Ex. 1***-Factoring Agreement, § 15).

26. Blue Sky, identifying itself as having "close business and financial relationships" with EcoWattle, also "absolutely and unconditionally" guaranteed payment and performance of all obligations of EcoWattle under the Factoring Agreement by executing and delivering a Multicorporate Guaranty dated October 26, 2011, a true and correct copy of which is attached hereto as ***Exhibit 2*** (the "Blue Sky Guaranty").

27. Gary Herwood executed the Blue Sky Guaranty as President of Blue Sky and Member of EcoWattle:



**IN WITNESS WHEREOF**, the parties hereto have caused this Guaranty, consisting of twelve (12) pages, to be duly executed, as of the date first set forth above.

**SKY BUSINESS CREDIT, LLC**

By: Gail Reints
Name: Gail Reints
Title: President

**TEXAS SUSTAINABLE INDUSTRIES LLC**

By:
Name: Gary Herwood
Title: Member

**BLUE SKY MARKETING & CONSULTING, INC.**

By:
Name: Gary Herwood
Title: President

28. Commencing on October 28, 2011, SBC perfected its security interest in certain EcoWattle Collateral, including the Accounts, contracts and contract rights, and proceeds thereof by filing UCC Financing Statements with the Secretary of State of Texas, as reflected on the summary attached hereto and incorporated by reference herein as ***Exhibit 3*** (the "UCC Financing Statement Summary").

29. The Factoring Agreement required EcoWattle to submit "Supporting Documentation" in the form of invoices, shipping and delivery receipts for the erosion services and products, an Assignment Schedule, and other documents to substantiate the Account Debtors' obligation on the invoices and, therefore, SBC's ability to receive payment from the Account Debtors:

> 2.2 ASSIGNMENT SCHEDULE. All Accounts shall be submitted to Purchaser and shall be listed on an executed Assignment Schedule in a form satisfactory to Purchaser and shall be delivered to Purchaser with: (a) at Purchaser's election, identical duplicates of each invoice or originals; (b) all original shipping or delivery receipts; and (c) such other documents as Purchaser may require (collectively the "Supporting Documentation").

(***Ex. 1***-Factoring Agreement §2.2).

30. The Factoring Agreement and related documents were discussed by SBC and Defendants by telephone and were transmitted between them by United States mail and over the wire by electronic means through emails.

***D. Financial Accommodations by SBC***

31. Induced by representations and information that EcoWattle and Gary Herwood provided, SBC began purchasing Accounts from EcoWattle in October 2011.

32. To induce the sale of Accounts under the Factoring Agreement, EcoWattle provided SBC with Supporting Documentation, including invoices, names, email addresses, and other information of its supposed Account Debtors.

33. In reliance on the Supporting Documentation and the communications and representations made by EcoWattle and Gary Herwood, SBC made the Advances to EcoWattle (the "Advances").

34. Between October 26, 2011 and October 17, 2024, SBC purchased various Accounts on a monthly basis from EcoWattle, beginning at approximately $10,000 per month in 2011, and increasing to more than $3,500,000 per month in 2024.

35. As of October 21, 2024, SBC had advanced net sums of at least Seven Million Ten Thousand Four Hundred and Sixty and 80/100 Dollars ($7,010,460.80) to EcoWattle, which remained unpaid (the "Outstanding Accounts"). Adding fees and other charges, including early termination fees, due pursuant to the terms of the Factoring Agreement, the amount due under the Factoring Agreement was at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024.

***E. Discovery of Defendants' Fraud***

36. As part of a routine audit in mid-October 2024 and as permitted by the Factoring Agreement, SBC requested copies of EcoWattle's filed tax returns.

37. EcoWattle, through Gary Herwood, provided a 2023 tax return (the "EcoWattle Tax Returns"), representing that it had been duly filed with the Internal Revenue Service for that tax year.

38. Upon further inquiry and review of tax transcripts obtained through a third-party vendor, SBC discovered that EcoWattle had not filed its Form 1065 Federal tax returns from 2014 through the current date.

39. This irregularity prompted further investigation, which revealed that EcoWattle, through the actions of Gary Herwood and Dawn Herwood, had been falsifying invoices and selling them to SBC for purported Account Debtors that did not exist but simulated former or actual Account Debtors of EcoWattle (the "Fake Account Debtors"). The invoices were made to appear as though they were associated with legitimate companies. The Fake Account Debtors all had email addresses ending in ".net" and used fake domain names and email addresses that were similar to those of the legitimate businesses. In most instances, inputting the domain name of the Fake Account Debtors would redirect to the website of the legitimate company.

40. A listing of the Fake Account Debtors whose Accounts EcoWattle sold to SBC and for which EcoWattle ostensibly provided Supporting Documentation are identified on the Summary Spreadsheet of Customers, along with a listing of their aged accounts receivables totaling $8,786,870.00 as of October 18, 2024, is attached hereto and incorporated as ***Exhibit 4***.

41. Through telephone calls and emails that SBC placed on and after October 18, 2024, SBC confirmed that none of the Accounts of these Fake Account Debtors were legitimate. Some of the legitimate companies that SBC contacted indicated that they had never heard of Gary Herwood or EcoWattle, had never done business with EcoWattle, and did not owe any funds to EcoWattle. Some were former customers of EcoWattle that no longer had active accounts with EcoWattle.

### *F. Personal Involvement of Gary Herwood and Dawn Herwood*

42. When SBC questioned Gary Herwood about the EcoWattle Tax Returns by telephone on Friday, October 18, 2024, he initially misrepresented affirmatively that he had filed the 1065 tax return for 2023 and every year prior. When informed that the tax transcripts reported that EcoWattle had not filed a 1065 tax return for any year from 2014 to 2023, Gary Herwood hedged and said that "a few years ago he accidentally transposed a number on a K-1 so, the IRS must have misfiled them under the wrong EIN."

43. During that telephone call on October 18, 2024, SBC asked Gary Herwood to explain why some of the supposed customers that SBC had reached by phone had stated either that they did not know Gary Herwood or EcoWattle or that they had not done business with him for several years. Gary Herwood refused to answer, claiming that he had a few drinks with his wife at lunch and did not want to talk while driving, so he would call back to discuss when he arrived home.

44. As of the filing of this Verified Complaint, neither Gary Herwood nor Dawn Herwood nor any other representative of Defendants has contacted SBC to discuss or explain the discrepancies related to the EcoWattle Tax Returns, the Account Debtors, the Fake Account Debtors, or the Outstanding Accounts.

45. Upon further investigation by retrieving records from the Texas Secretary of State, true and correct copies of which (along with a Summary Cover Sheet) are attached hereto as ***Exhibit 5***, SBC determined that the Fake Account Debtors had been set up by Dawn Herwood using the name "D.M. Chapman" or "Dawn M. Chapman," which is believed to be her maiden name:



46. The Texas Secretary of State records also reflect that the Fake Account Debtors were created in or after 2015 and most listed a corporate registered agent (Texan Registered Agent LLC) and also used that corporate agent's address as the address of manager and organizer "D.M. Chapman," to conceal the identity and address of Dawn Herwood.

47. Many of the annual reports for those Fake Account Debtors appear to have been filed by Gary Herwood.

48. The Fake Account Debtors were represented to SBC to be legitimate entities from whom the Outstanding Accounts were due and owing.

49. As part of a premeditated scheme to defraud SBC, Gary Herwood knowingly and falsely represented to SBC that the Fake Account Debtors were legitimate Account Debtors with collectible Accounts generated by EcoWattle's sale of erosion services and products, as reflected in the Supporting Documentation that EcoWattle submitted for each Account.

50. Unbeknownst to SBC when it purchased the Outstanding Accounts, EcoWattle, Gary Herwood, and Dawn Herwood had concocted a scheme to induce SBC to purchase the Outstanding Accounts and make Advances on such Outstanding Accounts, knowing that the Fake Account Debtors did not exist and that SBC would never be paid by them.

51. The invoices submitted as Supporting Documentation for the Outstanding Accounts were fabricated and falsified invoices and the approvals were fabricated and sent by Gary Herwood or Dawn Herwood but were made to appear as though they were coming from legitimate Account Debtors.

52. Defendants knew the false misrepresentations made to and false documents created and submitted to SBC would be relied upon by SBC and were, in fact, relied upon by SBC in purchasing the Outstanding Accounts and making the Advances to EcoWattle.

53. To induce SBC to purchase the Outstanding Accounts and make the Advances, Defendants deceived SBC by providing falsified Supporting Documents showing Proof of Delivery of the goods and services by EcoWattle and then copying SBC on monthly email transmissions of statements listing all unpaid invoices to the Fake Account Debtors. The emails would request approval of the counterfeit invoices listed on the Statements, Gary Herwood or Dawn Herwood (acting surreptitiously for the Fake Account Debtors) would receive and respond to the email, approving the invoices, and SBC would purchase the invoice based on Gary Herwood or Dawn Herwood's falsified approval of the counterfeit invoices. Notably, all emails approving the invoices were generated from domain names deceptively similar to legitimate companies, some of whom EcoWattle had previously or was then doing business. True and correct copies of the counterfeit invoices and falsified email approvals that were submitted by Gary Herwood and Dawn Herwood for the Outstanding Accounts as of September 30, 2024 are attached hereto as ***Exhibit 6.***

54. In most cases, Gary Herwood or Dawn Herwood would make payments to SBC on behalf of these Fake Account Debtors by transmitting funds in interstate commerce via wire transfers to SBC's bank in Minnesota. Records provided by SBC's bank, which are summarized below, reflect that the names of the originating senders on those wire transfers match the names of the Fake Account Debtors that Dawn Herwood registered with the Texas Secretary of State. Some of the wire transfers have the Fake Account Debtors' registered address, and some match EcoWattle's address (125 S. Virginia Ave., Tyler, TX 75702), but all the wire transfers from these Fake Account Debtors came from Bank of America.

55. Many of the payments were received from an entity known as "Southern States Infrastructure Services" ("SSIS"), also from an account at Bank of America. When SBC

questioned Gary Herwood in January 2017 as to why payments were coming from SSIS, Gary Herwood feigned a lack of personal knowledge, starting with "Here's what I can piece together from what I was told by our customers." He then explained his understanding that SSIS had contracted to provide collection and payment services to a group of subscribed Account Debtors, to achieve cost reductions. Gary Herwood closed the email explanation by assuring "Yes, it's unusual, but I'm good with it as long as they keep ordering and paying." A true and correct copy of the email correspondence in which Gary Herwood conveyed his concocted story is attached hereto and incorporated as ***Exhibit*** *7*.

56. In fact, SSIS is an LLC that Gary Herwood's wife (under the name Dawn M. Chapman) formed in 2015, as reflected in the Certificate of Formation from the Texas Secretary of State. See Ex. 5, pp. 22-25. All the Account Debtors for whom SSIS was allegedly making payments were also Fake Account Debtors.

57. A representative sample of the wire transfers in the month of October 2024 reflect the commonalities among the originators' addresses of the Fake Account Debtors and the sending financial institution:

| Originator Name | Originator Address | Sending Financial Institution | Originator to Beneficiary Information | Wire Transfer Date | Wire Sequence Number | Amount |
|---|---|---|---|---|---|---|
| ABR Materials LLC | 5900 Balcones Dr., Suite 100, Austin, TX 78731 | xxxxx9593 BK Amer NYC | Invoices 10114 thru 10118 Texas Sustainab 515478868 | 10/10/2024 | 79894685 | $95,200.00 |
| Jamesco Group LLC | 5900 Balcones Dr., Suite 100, Austin, TX 78731 | xxxxx9593 BK Amer NYC | ECO 10142 10154 10161 10169 10177 516347678 | 10/16/2024 | 80043355 | $94,700.00 |
| MP Purchasing Group LLC | 5900 Balcones Dr., Suite 100, Austin, TX 78731 | xxxxx9593 BK Amer NYC | Invoices #10155 10162 10170 Tex Sustaina 516343216 | 10/16/2024 | 80042005 | $50,130.00 |
| KE Environmental Services LLC | 713 W SW Loop 323, Tyler, TX 75701 | xxxxx9593 BK Amer NYC | Invoice #10167 Ecowattle | 10/17/2024 | 80082001 | $13,610.00 |
| FHC Sourcing LLC | 125 S. Virginia Ave., Tyler, TX 75702 | xxxxx9593 BK Amer NYC | Invoices #10183 thru #10187 Texas Sustainab 516502998 | 10/17/2024 | 80077422 | $98,850.00 |
| ETB Financial LLC | P.O. Box 582, Gladwater, TX 75647 | xxxxx9593 BK Amer NYC | Invoice #10172 Texas Sustainable Ind 516744714 | 10/18/2024 | 80124670 | $15,410.00 |
| KR South LLC | 5900 Balcones Dr., Suite 100, Austin, TX 78731 | xxxxx9593 BK Amer NYC | Invoices #10175 & #10190 TX Sus Ind 516732090 | 10/18/2024 | 80120962 | $27,220.00 |
| Southern States Infrastructure Serv. | 713 W SW Loop 323, Tyler, TX 75701 | xxxxx9593 BK Amer NYC | ECOW Invoices #10160 65 73 80 89 516730376 | 10/18/2024 | 80120504 | $76.340.00 |

58. With every set of invoices on which it requested Advances from SBC, EcoWattle (by Gary Herwood) submitted an Assignment Schedule listing the customer, invoice number, date and amount of invoice. each such Assignment Schedule was signed by Gary Herwood and included a

representation and warranty regarding the authenticity of the accounts and their compliance with the Factoring Agreement:

> Seller represents and warrants that the foregoing accounts offered for sale to **Sky Business Credit, LLC** by this Assignment Schedule are each being offered pursuant to and in accordance with the terms of the Agreement for Purchase and Sale, including but not limited to the representations, warranties and covenants therein, which Agreement for Purchase and Sale, Seller agrees is in full force and effect and is hereby ratified, approved and confirmed in all respects.
>
> Client Company: **Texas Sustainable Industries LLC**
>
> Print Name Gary Herwood
>
> Signed
>
> Title Member

59. As an example, the Assignment Schedule for October 11, 1024, requesting SBC to purchase total invoices of $279,930.00 (including the email by which Gary Herwood transmitted it) is attached hereto and incorporated herein as ***Exhibit 8***.

60. As reflected on ***Exhibit 9*** hereto, as of October 21, 2024, Gary Herwood identified himself on his LinkedIn account as the "Managing Partner at Texas Sustainable Industries, LLC" and "Owner at Blue Sky Marketing and Consulting, Inc."

61. Gary Herwood is the signatory to the Factoring Agreement, the Gary Herwood Guaranty, the Blue Sky Guaranty, and numerous other documents submitted on behalf of EcoWattle over a 13-year period.

62. Gary Herwood is identified on numerous invoices as the "Contact" for EcoWattle.

63. Gary Herwood supervised and was involved in the daily operations of EcoWattle.

64. Gary Herwood was a signatory on EcoWattle's bank accounts.

65. Gary Herwood oversaw and participated in the preparation of Supporting Documentation submitted to SBC.

66. Gary Herwood personally caused or personally participated in the submission of the Supporting Documentation to SBC.

67. Gary Herwood personally communicated directly with SBC regarding the EcoWattle Tax Returns.

68. Gary Herwood personally communicated directly with SBC regarding the Account Debtors.

69. Gary Herwood personally communicated directly with SBC regarding the Outstanding Accounts and the Fake Account Debtors.

70. Dawn Herwood witnessed Gary Herwood's signature on the Factoring Agreement.

71. According to the Texas Secretary of State's Business Corporation records, Dawn Herwood is identified as the Registered Agent of EcoWattle.

72. Dawn Herwood knowingly collaborated with Gary Herwood by registering the Fake Account Debtors, which Gary Harwood then represented to be legitimate Account Debtors whose Accounts they could sell to SBC and from whom SBC could collect.

73. SBC had multiple and frequent contacts with Gary Herwood, by email and telephone, beginning on or about October 2011 through October 2024 regarding all aspects of the operations and Accounts of EcoWattle.

***G. SBC's Due Diligence***

74. SBC believed it was emailing "Notices of Assignment" to legitimate Account Debtors, but because it was using modified email addresses and domain names provided to it as part of the scheme executed by Gary Herwood and Dawn Herwood, those notices were going to the Fake Account Debtors, where Gary Herwood and Dawn Herwood intercepted and acknowledged them.

75. Hence, Defendants thwarted SBC's attempt to satisfy the requirement under the Illinois UCC that notice of the assignment be given to Account Debtors, to provide them with notice that all payments of the Accounts of EcoWattle should be made to SBC.

76. SBC was in communication with EcoWattle and Gary Herwood virtually every business day in connection with the factoring facility, by telephone, email, or text message.

77. During such communications, SBC routinely verified that the Accounts submitted as due from Account Debtors were "Eligible Accounts" under the Factoring Agreement. SBC also required monthly bank statements from EcoWattle, which statements it now believes to have been falsified by Defendants.

78. On or about October 21, 2024, SBC sent written demand to EcoWattle, Blue Sky, and Gary Herwood for repayment of the Outstanding Accounts, a true and correct copy of which is attached hereto as ***Exhibit 10***.

79. To date, Defendants have failed to pay the Outstanding Accounts.

## COUNT I
## BREACH OF CONTRACT BY ECOWATTLE

80. SBC realleges Paragraphs 1 through 79.

81. The Factoring Agreement expressly provides that all Accounts purchased by SBC from EcoWattle pursuant to the Factoring Agreement were purchased "with recourse to [EcoWattle] and at [EcoWattle's] sole credit risk" and that "Chargedback" Accounts were subject to a two percent (2%) fee:

> All Accounts sold to and purchased by Purchaser are with recourse to Seller and at Seller's sole credit risk. Purchaser shall have the right to require any advances on any Accounts be repurchased by Seller ("Chargedback") under the terms and conditions herein, which shall mean a fee in the amount of two percent (2.00%) for each Account Purchased that Seller fails to repurchase (the "Chargeback Fee"). In the event of a Chargedback Account: (i) Seller agrees to pay Purchaser the full amount thereof, and failing to do so, Seller shall be responsible for all damages, including all expenses incurred by Purchaser in attempting to collect or enforce payment of such Accounts; and (ii) in addition to Purchaser's right to receive its other fees set forth in the Agreement, Purchaser shall be entitled to assess a Chargeback Fee.

(***Ex. 1***-Factoring Agreement, §10.4).

82. The Factoring Agreement expressly provides that any invoices that were not paid within 90 days of their due date were subject to a fee of one and one-half percent (1.50%) every 15 days, which is an additional obligation of EcoWattle under the Factoring Agreement:

> Any Account over ninety (90) days old on which Account Seller has received an advance may be charged a fee in the amount of one and one half percent (1.50%) for each Account Purchased for which Seller has received an advance, which Account represents an any invoice over ninety (90) days old and which fee shall continue at a rate of one and one half percent (1.50%) for each fifteen (15) day period or any portion thereof for as long as such Account Purchased remains over ninety (90) days old (the "Over 90 Day Fee"). Any and all Over 90 Day Fees shall be an Obligation of Seller and which shall be in addition to any other fees due to Purchaser hereunder.

(***Ex. 1***-Factoring Agreement, §10.5).

83. EcoWattle's failure to pay the Outstanding Accounts is an express breach and event of default of the Factoring Agreement. (***Ex. 1***-Factoring Agreement, §8.1).

84. EcoWattle has failed to perform its duties under the Factoring Agreement by failing to repay the Outstanding Accounts, failing to provide financial information and bank statements, refusing to allow SBC to examine and verify its financial records, misrepresenting that records of EcoWattle (including without limitation the Supporting Documents) were true and accurate, and failing to timely file tax returns. (***Ex. 1***- Factoring Agreement, p. 1, ¶F, §6.3, and §10.3).

85. EcoWattle has breached its warranties, representation, and covenants under the Factoring Agreement by submitting financial records and documentation that were not true and accurate and by failing to provide financial information requested by SBC, among other breaches. (***Ex. 1***-Factoring Agreement, §6.3).

86. EcoWattle has furnished to SBC untrue and incorrect reports and other documents related to its alleged Accounts and Account Debtors, including without limitation its misrepresentation that it had filed the EcoWattle Tax Returns and its fabrication of Account Debtors and the Outstanding Accounts.

87. EcoWattle has failed to timely file its tax returns when due.

88. A material adverse change has occurred in EcoWattle's financial condition, as it was represented to SBC to induce it to enter into the Factoring Agreement.

89. Due to the fraudulent conduct and misrepresentations of EcoWattle, SBC now deems itself insecure and has reasonable cause to believe that EcoWattle's performance under the Factoring Agreement appears jeopardized and that the performance of the guarantors on the Gary Herwood Guaranty and the Blue Sky Guaranty also appears jeopardized.

90. EcoWattle has thus committed "Events of Default" under the Factoring Agreement, including without limitation the following provisions:

> (e) Seller shall fail to perform any duty under this Agreement;
>
> (f) Seller breaches any warranty, representation or covenant set forth herein, or any warranty, representation or covenant is not true, accurate or correct,
>
> (g) any Assignment Schedule, report, certificate, financial statement, or other document furnished by Seller to Purchaser, or by any other person on behalf of Seller, is untrue, incorrect or becomes untrue or incorrect in any respect;
>
> (h) Seller shall fall to pay any federal or state tax or fall to timely file any tax form as and when due,
>
> (i) a material adverse change occurs in Seller's financial condition, business or operations, and
>
> * * *
>
> (m) Purchaser deems itself insecure and has reasonable cause to believe that the prospect of Seller's performance under the Agreement appears jeopardized or if Purchaser deems itself insecure and has reasonable cause to believe that the prospect of any Guarantor's performance appears jeopardized regardless of Seller's performance.

(***Ex. 1***-Factoring Agreement, §8.1).

91. The Factoring Agreement provides the following remedies, among others, upon the occurrence of an Event of Default:

> (a) all Obligations owed to Purchaser shall be immediately due and payable upon demand by Purchaser;
>
> (b) Purchaser shall have the right to charge a fee of Three Percent (3%) for the first thirty (30) days or Increment thereof that an Account Purchased remains unpaid and, after such 30 day period, an additional Three Percent (3%) for each 15 day period or increment thereof that an Account Purchased remains unpaid (the "Default Rate"), which Default Rate shall be assessed on the face value of the Account and which Default Rate shall be In addition to any other fees due to Purchaser hereunder;
>
> (c) Purchaser shall have the right. at its discretion, to cease further advances and/or to terminate this Agreement;

(d) Purchaser shall have the right to enforce all lien rights of Seller;

(e) Seller hereby irrevocably authorizes any financial institution in which it has an account that so much of the funds necessary to cure Seller's breach as set forth in writing by Purchaser to such financial institution shall be set aside to and for the exclusive benefit of Purchaser. Seller shall pay to Purchaser an additional five percent (5%) of the face value of each for each Account Purchased and outstanding at any time during a Liquidation Period, as determined in the sole discretion of Purchaser (the "Liquidation Administration Fee"); and/or

(e) [sic] all of Seller's rights of access to Purchaser's online internet available services shall be provision. [sic] Purchaser makes available to Seller online constitutes and satisfies any duty to respond to a Request for an Accounting or Request regarding a Statement of Account pursuant to§ 9-210 of the UCC.

(***Ex. 1***-Factoring Agreement, §8.2).

92. SBC has suffered damages as result of EcoWattle's breach of the Factoring Agreement, which damages, although likely to increase, are in the amount of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024. Interest at the Default Rate continues to accrue.

93. EcoWattle is responsible for all attorney's fees, court costs, and other expenses incurred by SBC arising under or related to the Factoring Agreement:

> 11.3 <u>ATTORNEY'S FEES</u>. Seller agrees to reimburse Purchaser for all reasonable attorney's fees, court costs and other expenses incurred by Purchaser arising under or related to this Agreement. Notwithstanding the existence of any law, statute or rule, in any jurisdiction that may provide Seller with a right to attorney's fees or costs, Seller hereby waives any and all rights to hereafter seek attorney's fees or costs thereunder.

(***Ex. 1***-Factoring Agreement, §11.3).

**WHEREFORE**, SBC prays for a judgment against EcoWattle for compensatory damages of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest at the Default Rate through judgment, attorney's fees and costs, and other appropriate relief in SBC's favor.

## <u>COUNT II</u><br>BREACH OF GARY HERWOOD GUARANTY

94. SBC realleges Paragraphs 1 through 79.

95. To induce SBC to extend financial accommodations to EcoWattle, Gary Herwood executed the Gary Herwood Guaranty.

96. Pursuant to the Gary Herwood Guaranty, Gary Herwood absolutely and unconditionally guaranteed to SBC prompt payment and prompt, full and faithful performance and discharge by EcoWattle of all the terms, conditions, agreements, representations, warranties, guaranties and provisions on the part of EcoWattle (the "Gary Herwood Guaranteed Obligations"). (***Ex. 1,*** § 15 - Gary Herwood Guaranty)

97. On or about October 21, 2024, SBC sent written demand to Gary Herwood for payment of the Outstanding Accounts.

98. Gary Herwood has breached the Gary Herwood Guaranty and the Gary Herwood Guaranteed Obligations by failing to pay the Outstanding Accounts upon demand by SBC.

99. SBC has suffered damages as a result of Gary Herwood's breach of the Gary Herwood Guaranty, which damages, although likely to increase, are in the amount of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024.

100. Because attorney's fees, court costs, and other expenses incurred by SBC arising under or related to the Factoring Agreement are among the Gary Herwood Guaranteed Obligations, Gary Herwood is liable for such sums pursuant to the Gary Herwood Guaranty. (***Ex. 1***- Factoring Agreement, §11.3; Gary Herwood Guaranty, p. 5, §15).

WHEREFORE, SBC prays for a judgment in its favor and against Gary Herwood on Count II of the Complaint and for compensatory damages of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21,

2024, plus prejudgment interest at the Default Rate through judgment, attorney's fees and costs, and other appropriate relief in SBC's favor.

**COUNT III**
**BREACH OF BLUE SKY GUARANTY**

101. SBC realleges Paragraphs 1 through 79.

102. To induce SBC to extend financial accommodations to EcoWattle, Blue Sky executed the Blue Sky Guaranty whereby it "absolutely and unconditionally" guaranteed payment and performance of all obligations of EcoWattle under the Factoring Agreement. (***Ex. 2***-Blue Sky Guaranty, ¶2).

103. On or about October 21, 2024, SBC sent written demand to Blue Sky for payment of the Outstanding Accounts as guaranteed by the Blue Sky Guaranty. (***Ex. 9***-Demand Letter).

104. Blue Sky has breached the Blue Sky Guaranty by failing to pay the obligations owed under the Factoring Agreement, including Outstanding Accounts, after demand by SBC.

105. SBC has suffered damages as result of Blue Sky's breach of the Blue Sky Guaranty, which damages, although likely to increase, are in the amount of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024.

106. Blue Sky is liable for attorney's fees, court costs, and other expenses incurred by SBC arising under or related to the Factoring Agreement and also those incurred to enforce the Blue Sky Guaranty. (***Ex. 2***-Blue Sky Guaranty, ¶2).

WHEREFORE, SBC prays for a judgment in its favor and against Blue Sky on Count III of the Complaint and for compensatory damages of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus

prejudgment interest at the Default Rate through judgment, attorney's fees and costs, and other appropriate relief in SBC's favor.

**COUNT IV**
**COMMON LAW FRAUD BY ECOWATTLE, BLUE SKY, GARY HERWOOD, AND DAWN HERWOOD**

107. SBC realleges Paragraphs 1 through 79.

108. EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood conceived and engaged in a scheme to defraud SBC by falsifying and submitting records for Account Debtors and Accounts that did not exist and then selling those falsified Accounts to SBC.

109. In furtherance of the scheme to defraud, EcoWattle, Blue Sky, and Gary Herwood knowingly made false statements of material fact with the intent to induce SBC to enter the Factoring Agreement and make the Advances thereunder, including without limitation:

a. that EcoWattle was engaged in the business of selling erosion control products and services for which it invoiced Account Debtors on valid and existing Accounts;

b. that the Account Debtors purportedly owing on Accounts submitted by EcoWattle for purchase by SBC were existing entities who owed EcoWattle for erosion control products and services;

c. that the Accounts submitted by EcoWattle for purchase by SBC were owed by existing entities and were bona fide Accounts created through erosion services and products performed by EcoWattle;

d. that the Accounts submitted by EcoWattle for purchase by SBC were owed by existing entities and were Eligible Accounts in accordance with Section 3 of the Factoring Agreement (***Ex. 1***-Factoring Agreement, ¶ 3);

e. that the Accounts submitted by EcoWattle for purchase were owed by existing entities and met the criteria contained in ¶ 6.2 of the Factoring Agreement (***Ex. 1***-Factoring Agreement, ¶ 6.2);

f. that EcoWattle possessed necessary Supporting Documentation evidencing that the Accounts submitted by EcoWattle for purchase were due and payable in full to SBC without counterclaim or offset;

g. that the Supporting Documents and other records EcoWattle submitted to SBC were truthful and accurate representations related to legitimate Account Debtors and Accounts;

h. that EcoWattle was a legitimate business that was timely filing tax returns; and

i. that Blue Sky was a legitimate and duly formed business with resources to meet its obligations on the BlueSky Guaranty

(collectively, but without limitation, the "Factoring Misrepresentations").

110. In furtherance of the scheme to defraud, EcoWattle, Gary Herwood, and Dawn Herwood knowingly established fictitious domains and email addresses imitating and replicating the domains and email addresses of legitimate organizations and individuals and thus made false statements or omissions of material fact to mislead SBC into believing such organizations were legitimate Account Debtors with the intent to induce SBC to purchase the Outstanding Accounts and make the Advances (collectively, but without limitation, the "Account Debtor Misrepresentations" and together with the Factoring Misrepresentations, the "EcoWattle Misrepresentations").

111. Through the EcoWattle Misrepresentations and as part of the scheme to defraud, EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood intended to induce SBC to make the Advances.

112. In reasonable reliance on the truth of the EcoWattle Misrepresentations, SBC entered the Factoring Agreement and made the Advances thereunder, accepted the Gary Herwood Guaranty, the Blue Sky Guaranty, and took other actions to its detriment.

113. As a result of its reasonable reliance on the EcoWattle Misrepresentations, SBC has incurred damages of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest at the Default Rate through judgment, attorney's fees, and costs.

114. EcoWattle received the Advances through the wrongful and fraudulent conduct of EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood.

115. EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood each acted willfully and wantonly and each knowingly and intentionally made the EcoWattle Misrepresentations to SBC with a deliberate disregard to the truth, the rights of SBC, and the risk of injury to SBC.

116. As detailed herein, Gary Herwood and Dawn Herwood and companies owned by them personally enriched themselves with the Advances received through the EcoWattle Misrepresentations and the scheme to defraud.

117. SBC is entitled to an award of punitive and exemplary damages against EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood, in an amount that includes as a measure of the punitive damages the attorney's fees, costs, and expenses incurred by SBC in bringing this lawsuit, and an amount not less than three times the amount of actual damages suffered by SBC to punish Defendants and to deter them and others from engaging in similar misconduct in the future.

**WHEREFORE**, SBC prays for judgment against EcoWattle, Blue Sky, Gary Herwood, Dawn Herwood, jointly and severally, for:

A. at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024;

B. punitive and exemplary damages in an amount that includes as a measure of the punitive damages the attorney's fees, costs, and expenses incurred by SBC in bringing this lawsuit, plus an amount not less than three times the amount of actual damages suffered by SBC;

C. alternatively, imposition of a constructive trust on all the Advances and proceeds thereof and imposition of an equitable lien on all property of EcoWattle, Blue Sky, Gary Herwood, and Dawn Herwood; and

D. other appropriate relief in its favor.

**COUNT V**
**RICO CLAIMS AGAINST GARY HERWOOD AND DAWN HERWOOD PURSUANT TO 18 U.S.C. § 1962(C)**

118. SBC reallege Paragraphs 1 through 79

119. Title 18 U.S.C. § 1962(c) provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

120. Gary Herwood and Dawn Herwood are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962.

121. Gary Herwood and Dawn Herwood operated EcoWattle, Blue Sky, and other companies (including the Fake Account Debtors) as a factoring fraud enterprise (the "Factoring Fraud Enterprise"), a group of individuals and corporations associated in fact, although not a legal entity.

122. The Factoring Fraud Enterprise conducted its activities in the States of Illinois, Minnesota, and Texas.

123. Gary Herwood and Dawn Herwood conducted the Factoring Fraud Enterprise through a pattern of racketeering activity, including without limitation the following predicate acts of federal mail fraud and wire fraud in interstate commerce:

a. Repeated and continuing acts of mail fraud as described above in violation of 18 U.S.C. § 1341, by voluntarily and intentionally devising and executing a scheme to defraud Factors, including SBC, that included use of the United States mail in furtherance of its scheme, by transmitting and receiving documents as described above (including without limitation payments, disbursements, and Supporting Documentation) through the United States Postal Service;

b. Repeated and continuing acts of wire fraud as described above in violation of 18 U.S.C. § 1343, by voluntarily and intentionally devising and executing a scheme to defraud Factors, including SBC, that included use of the interstate wire communications in furtherance of its scheme by its interstate telephone calls and regularly sending and receiving electronic transfers of funds by interstate wire;

c. As set forth herein, the Factoring Fraud Enterprise affected and operated in interstate commerce by (i) its operations centered in the State of Texas; (ii) its engaging in a series of financial transactions with SBC, which is based in and operates from the State of Illinois; and (iii) its receiving participation funding from a bank based in and operating from the State of Minnesota.

(the "Racketeering Activities").

124. The schemes to defraud consisted of fraudulent activities to induce SBC to make the Advances and provide other benefits to Defendants by means of false and fraudulent pretense, including without limitation:

a. intentionally fabricating and falsifying invoices and the Fake Account Debtors;
b. intentionally fabricating and falsifying the Supporting Documents;
c. intentionally misrepresenting that EcoWattle had provided products or services to Fake Account Debtors;
a. intentionally misrepresenting that the EcoWattle Tax Returns had been duly filed with the Internal Revenue Service; and
b. intentionally making the EcoWattle Misrepresentations detailed above.

125. The Racketeering Activities continued for an extended period, from at least 2015 through October 2024, during which Gary Herwood and Dawn Herwood used interstate mail, wire, and telephone to provide false and fraudulent information to SBC and to receive the Advances from SBC.

126. The numerous, continuous, and related Racketeering Activities alleged herein establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

127. SBC did in fact make the Advances to EcoWattle in reliance on the EcoWattle Misrepresentations and Racketeering Activities and has, as a result, suffered injury and incurred damages of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest, attorney's fees, and costs.

**WHEREFORE**, SBC prays for a judgment against Gary Herwood and Dawn Herwood, jointly and severally, finding that:

A. The association in fact of EcoWattle, Blue Sky, and the Fake Account Debtors is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962;

B. The Factoring Fraud Enterprise, consisting of EcoWattle , Blue Sky, and the Fake Account Debtors, is engaged in, or its activities affect, interstate commerce;

C. Gary Herwood and Dawn Herwood have conducted or participated, directly or indirectly, in the Factoring Fraud Enterprise's affairs through a pattern of racketeering activity;

D. The actions of Gary Herwood and Dawn Herwood, aforesaid, have resulted in injury to the business and property of SBC;

E. SBC has been damaged in the amount of at least Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest, attorney's fees, and costs;

F. SBC is entitled to judgment for all damages under 18 U.S.C. § 1964(c), including threefold its actual damages, a reasonable fee for its attorneys, costs of suit, and entry of judgment, jointly and severally, against Gary Herwood and Dawn Herwood;

G. Gary Herwood and Dawn Herwood are ordered to disgorge all proceeds derived from any violation of 18 U.S.C. § 1962(c), including any proceeds held by any third party such as EcoWattle or Blue Sky; and

H. Other appropriate relief in SBC's favor.

## COUNT VI
## VIOLATION OF ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT

128. SBC reallege Paragraphs 1 through 79.

129. The Advances from SBC were deposited into EcoWattle's bank account at Texas Bank and Trust ("TBT Account x0828").

130. EcoWattle has regularly provided what it represents to be bank statements for TBT Account x0828, which accurately reflect deposits of SBC's Advances. SBC has been unable to determine whether EcoWattle has altered those account statements, so it cannot confirm the balance of funds in the TBT Account x0828 and cannot confirm exact amounts transferred from that TBT Account x0828.

131. The bank statements that EcoWattle did provide admit that EcoWattle (by Gary Herwood) has been making frequent and sizeable transfers from TBT Account x0828 into Gary Herwood's personal bank account ("TBT Account x0844").

132. In August 2024 and September 2024, for example, EcoWattle made weekly transfers of $9,000 and additional monthly transfers of $29,000, for a total of approximately $68,000 per month (the "Bank Transfers") as reflected on the August 2024 and September 2024 bank statements (the "TBT Bank Statements") attached hereto and incorporated herein as ***Exhibit 11***.

133. The Bank Transfers were fraudulent as to SBC, under the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/5(a), because EcoWattle and Gary Herwood made the Bank Transfers

(1) with actual intent to hinder, delay, or defraud SBC; and

(2) without receiving a reasonably equivalent value in exchange for the Bank Transfers and while EcoWattle

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of EcoWattle were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

134. While selling the invoices for the Fake Account Debtors to SBC, EcoWattle was engaged in transactions that would leave an unreasonably small amount of remaining assets in relation to the $10 million debt it was incurring from its factoring of accounts.

135. In knowingly selling invoices for Fake Account Debtors and incurring debt from its factoring activities that would never be paid by those Fake Account Debtors, EcoWattle intended to incur, and believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

136. The actual intent of EcoWattle and Gary Herwood to defraud SBC is evidenced by the following statutory badges of fraud, under the IUFTA:

(1) the Bank Transfers were to insiders;

(8) the value of the consideration received by EcoWattle was not reasonably equivalent to the value of the asset transferred;

(9) EcoWattle was insolvent or became insolvent shortly after the Bank Transfers were made or the obligation was incurred; and

(10) the Bank Transfers occurred shortly before or shortly after a substantial debt was incurred.

137. The Bank Transfers were fraudulent as to SBC under the IUFTA, 740 ILCS 160/6(a), because SBC's claim arose before the Bank Transfers were made and EcoWattle made the Bank Transfers (a) without receiving a reasonably equivalent value in exchange for the Bank Transfers and (b) EcoWattle was insolvent at the time it made the Bank Transfers or EcoWattle became insolvent as a result of the Bank Transfers.

138. The Bank Transfers were fraudulent as to SBC under the IUFTA, 740 ILCS 160/6(b), because SBC's claim arose before the Bank Transfers were made and EcoWattle made the Bank Transfers to insiders for an antecedent debt, EcoWattle was insolvent at the time it made the Bank Transfers, and the insider had reasonable cause to believe that EcoWattle was insolvent.

139. Gary Herwood is an "affiliate" of EcoWattle under the IUFTA, because he either "owns, controls, or holds with power to vote, 20% or more of the outstanding voting securities" of EcoWattle, or because he operates EcoWattle's business, or because he controls substantially all EcoWattle's assets. 740 ILCS 160/2(a)(1) & (4).

140. Blue Sky is an "affiliate" of EcoWattle under the IUFTA, because it either "owns, controls, or holds with power to vote, 20% or more of the outstanding voting securities" of EcoWattle, or because it operates EcoWattle's business, or because it controls substantially all EcoWattle's assets. 740 ILCS 160/2(a)(1) & (4).

141. Account x0828 is an "asset" of EcoWattle under the IUFTA. 740 ILCS 160/2(b).

142. SBC's right to payment under the Factoring Agreement, including the Outstanding Accounts, is a "claim" and EcoWattle's liability is a "debt" under the IUFTA. 740 ILCS 160/2(c) and 740 ILCS 160/2(e).

143. SBC is a "creditor" under the IUFTA. 740 ILCS 160/2(d).

144. Gary Herwood is an "insider" of EcoWattle under the IUFTA because he is an officer, director, or person in control of EcoWattle. 740 ILCS 160/2(g).

145. Blue Sky is an "insider" of EcoWattle under the IUFTA because it is a person in control of EcoWattle. 740 ILCS 160/2(g).

146. Dawn Herwood is an "insider" of EcoWattle under the IUFTA because she is a relative of a general partner, director, officer, or person in control of EcoWattle. 740 ILCS 160/2(g).

147. None of EcoWattle, Blue Sky, Gary Herwood, or Dawn Herwood is an Illinois resident.

148. Due and diligent investigation reveals, upon information and belief, that none of EcoWattle, Blue Sky, Gary Herwood, or Dawn Herwood has sufficient assets to satisfy a judgment equivalent to the damages they have caused to SBC and the likely judgment against them, to wit: Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest, attorney's fees, and costs.

149. Pursuant to IUFTA, 740 ILCS 160/8(a)(3), SBC is entitled to the following remedies for seizing property to secure satisfaction of a potential judgment:

> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;
>
> (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>
> > (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> >
> > (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> >
> > (C) any other relief the circumstances may require.

740 ILCS 160/8(a).

**WHEREFORE,** SBC prays for a judgment against Defendants for all appropriate remedies under the IUFTA, including without limitation (1) avoidance of fraudulent transfers to the extent necessary to satisfy SBC's claim in the sum of Ten Million One Hundred Seventy-Seven Thousand Six Hundred Thirteen and 05/100 Dollars ($10,177,613.05) as of October 21, 2024, plus prejudgment interest, attorney's fees, and costs; (2) attachment or other provisional remedies; (3) an injunction and other appropriate relief to prevent further disposition of assets; and (4) other appropriate relief.

**VERIFICATION**

Under penalties for perjury as provided by law, the undersigned certifies that the statements set forth in this *Verified Complaint* are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Date: October 29, 2024

SKY BUSINESS CREDIT, LLC

By: Gail Reints-Pratl
Gail Reints-Pratl, President

Respectfully submitted,

/s/ Nancy J. Townsend
Nancy J. Townsend (#6191399)
Shannon L. Noder (#6304965)
Laurie A. Martin Montplaisir (#6237625)
33 N. Dearborn, Suite 1140
Chicago, IL 60602
(Tel) 312.423.9300
ntownsend@kdlegal.com
snoder@kdlegal.com
lmontplaisir@kdlegal.com
*Attorneys for Plaintiff*